MEM
F.#2018R01052

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PREMISES KNOWN AND DESCRIBED
AS:

ONE BLACK APPLE I-PHONE, FCC ID # BCG-
E3085A, IC # 579CE3085A (THE "SUBJECT
TELEPHONE").

– – – – – – – – – – – – – – – – – – X

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  JAN 09 2019  ★

LONG ISLAND OFFICE

AFFIDAVIT IN
SUPPORT OF A
SEARCH WARRANT

(Fed. R. Crim. P. 41)

 MJ 19– 25

EASTERN DISTRICT OF NEW YORK, SS:

DEREK J. WONDERLAND, being duly sworn, deposes and states that he is a

Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to

law and acting as such. Upon information and belief, there is probable cause to believe that

there is located in the PREMISES KNOWN AND DESCRIBED AS: ONE BLACK APPLE

I-PHONE, FCC ID # BCG-E3085A, IC # 579CE3085A (THE "SUBJECT TELEPHONE"),

further described in Attachment A, the things described in Attachment B, which constitute

evidence, fruits and instrumentalities of a narcotics trafficking conspiracy, in violation of

Title 21, United States Code, Sections 841(b)(1)(A) and 846.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I have been a Special Agent with the FBI since 2012.  During my tenure with the FBI, I have investigated various federal criminal violations including narcotics trafficking.  During the course of those investigations, I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants, monitored wiretaps, conducted controlled narcotics purchase and interviewed civilian witnesses.  The information set forth below is based upon my experience and training as a Special Agent, my review of documents and other evidentiary items and my discussions with other law enforcement agents.  Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.  Based on my experience, and in light of the information I have learned during this investigation, I believe there is probable cause that the SUBJECT TELEPHONE was used to communicate with others concerning a narcotics conspiracy, and to receive and store electronic information relating to the names, nicknames, telephone numbers and pager numbers of criminal accomplices.

<u>BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE</u>

2.      The FBI has been conducting an investigation into the distribution of crack cocaine, heroin and other controlled substances in Coram, New York.  During the

---

[1]      Because this affidavit is submitted for the limited purpose of establishing probable cause for the search warrant, I have not set forth each and every fact learned during the course of the investigation.

course of our investigation of this matter, the FBI has received information that BRANDYN

LIGGON, also known as "Swizz," was distributing controlled substances in Suffolk County.

      3.    Based on my training and experience, I am familiar with the typical

distribution and trafficking methods used by drug dealers and traffickers, including the

manufacture and distribution of narcotics.

      4.    In a substantial number of drug investigations, the following kinds of

drug-related evidence have typically been recovered:

      a.    Members of drug organizations often maintain close at hand the

addresses and telephone numbers of their criminal associates, including information

pertaining to their sources of supply and customers, in mobile telephones.

      b.    Records of calls to telephones (landlines and mobile

telephones).  Such records constitute important corroborative evidence in drug conspiracy

cases because the defendants call one another regularly, especially just before and after an

incident involving an act committed in furtherance of the conspiracy.

      c.    Drug traffickers frequently maintain records, receipts, notes,

ledgers, and other electronic documents relating to the ordering, sale and distribution of

drugs.  Such records are generally maintained where the traffickers have ready access to

them, such as the trafficker's cellular telephones.  Such records are maintained in digital

format on cellular phones, which are capable of holding digital data.

      d.    Drug traffickers frequently maintain financial records

evidencing the deposit and transfer of monies in their homes.  Such records are generally

maintained where the traffickers have ready access to them, such as the trafficker's cellular

3

telephones.  Such records are maintained in digital format on cellular phones, which are capable of holding digital data.

        e.      Based upon my training and experience, as well as my discussions with other law enforcement officers, I am aware that it is generally a common practice for drug traffickers to maintain records relating to their drug trafficking activities. Because drug traffickers will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s).  Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their trafficking business.  Such records are maintained in digital format on cellular telephones, which are capable of holding digital data.

        5.      Also, I know, from both my professional and personal experiences, that people often maintain multiple cellular telephones and other cellular telephones capable of holding digital data used to facilitate drug activities.

        6.      The investigation revealed that LIGGON used cellular telephones to conduct narcotics transactions.  Indeed, on five occasions between February 2018 and July 2018, a cooperating informant ("CI"), acting at law enforcement's direction, communicated with LIGGON using a cellular telephone for the purpose of conducting narcotics

4

transactions.[2] I reviewed the communications between the CI and LIGGON and confirmed that LIGGON utilized cellular telephones to conduct narcotics transactions.

7.      On August 14, 2018, a grand jury sitting in the Eastern District of New York returned a two-count indictment (the "Indictment") charging that between February 2013 and August 2018, LIGGON conspired to distribute and possess with intent to distribute 280 grams or more of a substance containing cocaine base, heroin, 100 grams or more of a substance containing furanyl fentanyl and 100 grams or more of a substance containing methoxyacetyl fentanyl (the "Target Offenses").  (See United States v. Brandyn Liggon, et al., 18-CR-430 (SJF); a copy of the Indictment is attached hereto as Exhibit #1.)  On August 14, 2018, the Honorable Anne Y. Shields, United States Magistrate Judge for the Eastern District of New York, signed a warrant authorizing the arrest of LIGGON.  (A copy of the arrest warrant is attached as Exhibit #2).

8.      On August 14, 2018, LIGGON was arrested in Suffolk County, New York.  Upon his arrest, all of the items were removed from his person in order to take an inventory of what was in his possession.  Law enforcement removed the SUBJECT TELEPHONE from inside LIGGONS' pant pocket.

9.      On August 14, 2018, LIGGON appeared before the Honorable Gary R. Brown to be arraigned on the Indictment.

10.     Based on my training, experience and discussions with other law enforcement officers, I understand that individuals involved in conspiracies to distribute and

_____

[2]      The information provided by CI has proven to be reliable and has been corroborated by other sources of information, including audio and video recordings, other witnesses and surveillance officers.  In exchange for cooperating with the government's

5

possess with intent to distribute narcotics and who use firearms in connection with drug trafficking crimes, often do not act alone and often communicate with co-conspirators by means of cellular telephones such as the SUBJECT TELEPHONE. Such persons commonly maintain records that reflect names, addresses, or telephone numbers of their associates in their cellular telephones. They also commonly maintain records of communications such as call logs, chats and text messages in their cellular telephones. They commonly take photographs of themselves, their associates, or their property using their cellular telephones. These individuals usually maintain these records of communication and photographs in their possession and in their cellular telephones.

TECHNICAL TERMS

9.     As used herein, the following terms have the following meanings:

10.     Wireless telephone (or mobile or cellular telephone): A handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and email; taking, sending, receiving and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal

investigation, the CI received monetary compensation.

calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device, and a wide variety of applications, also known as "apps," which may store the user's preferences and other data. Such apps may include Facebook, Twitter, and other social media services.

11.     Based on my research, I understand that the SUBJECT TELEPHONE provides not only phone and text message services, but can also be used to send and receive emails; access the Internet; track GPS data; take, store and share photographs and videos; and use a wide variety of apps. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the SUBJECT TELEPHONE.

TECHNICAL BACKGROUND

12.     As further described in Attachment B, this application seeks permission to locate not only data that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the SUBJECT TELEPHONE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence can be recovered from the SUBJECT TELEPHONE because:

a.     Data on an electronic device can provide evidence of a file that was once on the device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the device that show what tasks and

7

processes were recently active.  Web browsers, email programs, and instant messaging/"chat"

programs store configuration information on the device that can reveal information such as

online nicknames and passwords.  Operating systems can record additional information, such

as the attachment of peripherals, the attachment of USB flash storage devices or other

external storage media, and the times the device was in use.  Electronic devices can record

information about the dates files were created and the sequence in which they were created.

    b.  Forensic evidence on an electronic device can also indicate who

has used or controlled the device.  This "user attribution" evidence is analogous to the search

for "indicia of occupancy" while executing a search warrant at a residence.  For example,

registry information, configuration files, user profiles, email, email address books, instant

messaging or chat logs, photographs, the presence or absence of malware, and

correspondence (and the data associated with the foregoing, such as file creation and last-

accessed dates) may be evidence of who used or controlled the electronic device at a relevant

time.

    c.  A person with appropriate familiarity with how an electronic

device works can, after examining this forensic evidence in its proper context, draw

conclusions about how devices were used, the purpose of their use, who used them, and

when.

    d.  The process of identifying the exact files, blocks, registry

entries, logs, or other forms of forensic evidence on an electronic device that are necessary to

draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance

the records to be sought, such evidence is not always data that can be merely reviewed by a

review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding user attribution evidence, sometimes it is necessary to establish that a particular thing is not present on an electronic device. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

13.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for would permit the examination of the SUBJECT TELEPHONE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

14.    Because this application seeks only permission to examine the SUBJECT TELEPHONE, which is already in law enforcement's possession, the execution of the warrant does not involve intrusion into a physical location. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

15.    Based on the foregoing, there is probable cause to believe that there is located in the SUBJECT TELEPHONE, further described in Attachment A, the things

9

described in Attachment B, which constitute evidence, fruits and instrumentalities of a conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846,. Accordingly, the Court should issue the requested warrant.

16.    WHEREFORE, your deponent respectfully requests that a search warrant be issued for the PREMISES KNOWN AND DESCRIBED AS: ONE BLACK APPLE I-PHONE, FCC ID # BCG-E3085A, IC # 579CE3085A.

Dated: Central Islip, New York
       January 9, 2019

                                        DEREK J. WONDERLAND
                                        Special Agent
                                        FBI

Sworn to before me this
9 day of November, 2018  JAN  2019

/s/ Gary R. Brown
THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**EXHIBIT 1**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 14 2018   ★

LONG ISLAND OFFICE

CCC:MEM
F. #2018R01052

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

BRANDYN LIGGON,
    also known as "Swizz," and
CARL WASHINGTON,
    also known as "Noonie,"

               Defendants.

- - - - - - - - - - - X

**I N D I C T M E N T**

Cr. No. **C R   18   430**

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 2 and
3551 et seq.; T. 21, U.S.C.,
§§ 841(b)(1)(A)(iii), 841(b)(1)(A)(vi),
841(b)(1)(C) and 846)

THE GRAND JURY CHARGES:

COUNT ONE
(Conspiracy to Distribute and Possess
with Intent to Distribute Controlled Substances)

    1.    In or about and between February 2013 and August 2018, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants BRANDYN LIGGON, also known as "Swizz," and CARL WASHINGTON, also

known as "Noonie," together with others, did knowingly and intentionally conspire to

distribute and possess with intent to distribute one or more controlled substances, which

offense involved (a) a substance containing cocaine base, a Schedule II controlled substance;

(b) a substance containing heroin, a Schedule I controlled substance; (c) a substance

containing an analogue of fentanyl, to wit: furanyl fentanyl, a Schedule I controlled

2

substance; and (d) a substance containing an analogue of fentanyl, to wit: methoxyacetyl

fentanyl, a Schedule I controlled substance, contrary to Title 21, United States Code, Section

841(a)(1).   The amount of cocaine base, furanyl fentanyl and methoxyacetyl fentanyl

involved in the conspiracy attributable to each defendant as a result of his own conduct, and

the conduct of other conspirators reasonably foreseeable to him, was (a) 280 grams or more

of a substance containing cocaine base, (b) 100 grams or more of a substance containing

furanyl fentanyl, and (c) 100 grams of more of a substance containing methoxyacetyl

fentanyl.

      (Title 21, United States Code, Sections 846, 841(b)(1)(A)(iii),

841(b)(1)(A)(vi) and 841(b)(1)(C); Title 18, United States Code, Sections 3551 et seq.)

COUNT TWO
(Use of Firearms In Connection with a Drug Trafficking Crime)

      2.     In or about and between February 2013 and August 2018, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants BRANDYN LIGGON, also known as "Swizz," and CARL WASHINGTON, also

known as "Noonie," together with others, did knowingly and intentionally use and carry one

or more firearms during and in relation to a drug trafficking crime, to wit: the crime charged

3

in Count One, and did knowingly and intentionally possess said firearms in furtherance of

said drug trafficking crime.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 2 and 3551 et seq.)

A TRUE BILL

FOREPERSON

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2018R01052
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

BRANDYN LIGGON, ALSO KNOWN AS "SWIZZ," AND
CARL WASHINGTON, ALSO KNOWN AS "NOONIE,",

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 2 and 3551 et seq.; T. 21, U.S.C.,
§§ 841(b)(1)(A)(iii), 841(b)(1)(A)(vi), 841(b)(1)(C) and 846)

*A true bill.*

_____ *Foreperson*

*Filed in open court this* _____ *day.*

*of* _____ *A.D. 20* _____

_____ *Clerk*

*Bail, $* _____

*Christopher C. Caffarone, Assistant U.S. Attorney (631) 715-7868*

**EXHIBIT 2**

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

United States of America
v.
**BRANDYN LIGGON,**
**also known as "Swizz,"**

)
)
)
)
)
)

Case No.

**C R   18   430**

*Defendant*

**FEUERSTEIN, J.**

## ARREST WARRANT

**BROWN, M. J.**

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   BRANDYN LIGGON, also known as "Swizz," _____,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, contrary to Title 21, United States Code, Section 841(a)(1), and Use of Firearms In Connection with a Drug Trafficking Crime, contrary to Title 18, United States Code, Sections 924(c)(1)(A)(i).

Date: ____08/14/2018____

_____
*Issuing officer's signature*

City and state:   Central Islip, New York

_____
Honorable Anne Y. Shields, U.S.M.J.
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____        _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

## ATTACHMENT A

### Property To Be Searched

The property to be searched is ONE BLACK APPLE I-PHONE, FCC ID # BCG-E3085A, IC # 579CE3085A (THE "SUBJECT TELEPHONE"), seized on or about August 14, from BRANDYN LIGGON's person in Suffolk County, New York.  The warrant authorizes the forensic examination of the SUBJECT TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things To Be Seized

All information obtained from the SUBJECT TELEPHONE will be maintained by the government for the purpose of authentication and any potential discovery obligations in any related prosecution. The information shall be reviewed by the government only for the purpose of identifying and seizing all information described below that constitutes evidence, fruits, or instrumentalities of a conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846, including:

      1.     All records and information on the SUBJECT TELEPHONE described in Attachment A, including (a) names and telephone numbers, as well as the contents of all call logs, contact lists, and (b) for the time period February 2013 through August 2018, text messages, emails (including those sent, received, deleted and drafted), instant messages, photographs, videos, social media account activity (including postings and messages), Internet activity (including browser history, web page logs, and search terms entered by the user), and other electronic media constituting evidence, fruits, or instrumentalities of the violations described above.

      2.     Evidence of user attribution showing who used or owned the SUBJECT TELEPHONE at the time the things described in this warrant were created, edited, or deleted, such as, for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Evidence of software that would allow others to control the SUBJECT TELEPHONE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

4.      Evidence of the lack of such malicious software;

5.      Evidence of the attachment to the SUBJECT TELEPHONE of other storage devices or similar containers for electronic evidence;

6.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT TELEPHONE;

7.      Evidence of the times the SUBJECT TELEPHONE were used;

8.      Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT TELEPHONE; and

9.      Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violations described above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

13